EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Trans Ad de Puerto Rico, Inc.<br><br>Peticionario<br><br>v.<br><br>Junta de Subastas<br>Autoridad Metropolitana<br>de Autobuses<br><br>Recurrido | Certiorari<br><br>2008 TSPR 110<br><br>174 DPR _____ |

Número del Caso: CC-2006-778


Fecha: 24 de junio de 2008


Tribunal de Apelaciones:

          Región Judicial de San Juan-Panel VI

Juez Ponente:

          Hon. Carlos M. Rodríguez Muñiz


Abogado de la Parte Peticionaria:

          Lcdo. Ildefonso Torres Rodríguez

Abogado de la Parte Recurrida:

          Lcda. Marta E. Vilá Báez
          Lcdo. Heriberto J. Burgos Pérez
          Lcda. Luz Nereidad Carrero Muñiz



Materia: Reconsideración de Adjudicación de Propuesta



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

San Juan, Puerto Rico, a 24 de junio de 2008

Debido a la no intervención del Juez Presidente señor Hernández Denton y del Juez Asociado señor Rebollo López, se constituye una Sala Especial integrada por el Juez Asociado señor Rivera Pérez como su Presidente y las Jueces Asociadas señora Fiol Matta y señora Rodríguez Rodríguez, para entender en el caso Núm. CC-2006-778, *Trans Ad de Puerto Rico, Inc. v. Junta de Subastas, Autoridad Metropolitana de Autobuses.*

Lo decretó y firma.


Efraín E. Rivera Pérez
Juez Asociado

CERTIFICO:


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Trans Ad de Puerto Rico, Inc.

    Peticionario

       v.                     CC-2006-778

Junta de Subastas
Autoridad Metropolitana
de Autobuses

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 24 de junio de 2008

El presente caso nos brinda la oportunidad de determinar si el expediente administrativo de un procedimiento de subasta celebrado por un ente gubernamental es un documento público sujeto a la inspección de la ciudadanía. Resolvemos en la afirmativa. Examinemos los hechos de los que surge la controversia antes esbozada.

**I**

El 28 de febrero de 2005 la Autoridad Metropolitana de Autobuses (en adelante "la Autoridad" o A.M.A.) anunció en el diario Primera Hora el Requerimiento de Propuestas (Request for Proposals o RFP por sus siglas en inglés) número 2005-01 para la contratación del servicio de

publicidad en sus autobuses y terminales.[1]  El 15 de marzo de 2005 se celebró la apertura del procedimiento al cual comparecieron como licitadores QMC Media, Inc. h/n/c Viu Media,[2] Caribbean Signs y la peticionaria en el caso de epígrafe, Trans Ad de Puerto Rico, Inc.  Esta última especificó que presentaba su propuesta "bajo protesta".

Dos días después del acto de apertura, Trans Ad presentó ante el Tribunal de Primera Instancia una demanda y solicitud de interdicto preliminar en contra de la A.M.A. y su entonces Presidenta y Directora General, la señora Adaline Torres Santiago.  Incluyó también como demandado al señor Gabriel Alcaraz Emanuelli, quien a esa fecha fungía como Secretario del Departamento de Transportación y Obras Públicas y Presidente de la Junta de Directores de la Autoridad.  En esencia, Trans Ad alegó que entre la Autoridad y ella existía un contrato válido y aún vigente para la prestación de los servicios de publicidad en los autobuses y terminales.  Sostuvo que, por tal razón, la Autoridad estaba impedida de iniciar un procedimiento de requerimiento de propuestas para la contratación de tales servicios.  Solicitó, por tanto, la paralización del mismo.

La A.M.A. compareció mediante una moción en oposición y solicitud de desestimación en la que expuso que la controversia no era justiciable por carecer de madurez y

---

[1] Este servicio se refiere a la colocación de anuncios publicitarios en los autobuses y terminales de la Autoridad.

[2] Al presente esta compañía se conoce como Lamar Advertising de Puerto Rico.

que la parte demandante no había agotado los remedios administrativos antes de acudir al foro judicial. Añadió que no había riesgo de causar daño irreparable a la parte demandante mediante la adjudicación del requerimiento de propuestas, debido a que el perfeccionamiento del contrato de servicios producto de ésta sería posterior al vencimiento del contrato con Trans Ad. No surge del expediente la resolución a esta controversia.

Así las cosas, mediante carta fechada el 13 de julio de 2005, la A.M.A. notificó a los licitadores la adjudicación del requerimiento de propuestas a Viu Media. Dicha notificación fue motivo de dos peticiones de reconsideración ante la Junta de Reconsideración de Subastas de la Autoridad. Cabe señalar que en ambas mociones de reconsideración, Trans Ad alegó que el Vicepresidente de Servicios Administrativos de la Autoridad le había negado acceso al expediente del procedimiento de subasta, instruyéndole a que dirigiera su solicitud a la Junta de Reconsideración de Subastas. Por tal razón, de forma simultánea a la presentación de sus mociones de reconsideración, Trans Ad cursó a la Autoridad sendos pliegos de interrogatorios y solicitud de producción de documentos mediante los cuales solicitó copia de documentos obrantes en el expediente administrativo del RFP 2005-01 así como información respecto a la manera en que se condujo el proceso de adjudicación.

La notificación también fue objeto de una posterior revisión judicial por parte del Tribunal de Apelaciones, el cual ordenó a la Autoridad emitir una tercera notificación conforme a derecho. En esta tercera notificación la Autoridad incluyó la información requerida, a saber: un resumen de las propuestas de todos los licitadores, incluyendo las ventajas y desventajas de cada una de éstas. Además, consignó varias razones por las cuales no concedía la buena pro a Trans Ad por motivo de la experiencia de contratación pasada con dicha licitadora.

En una tercera moción de reconsideración ante la Junta de Reconsideración de Subastas de la A.M.A., Trans Ad cuestionó los méritos de la adjudicación. Además, cursó un tercer pliego de interrogatorios y solicitud de producción de documentos a la Autoridad y solicitó la celebración de una vista informal. Dicha moción no fue considerada por la Junta de Reconsideración, por lo que Trans Ad acudió al Tribunal de Apelaciones mediante un recurso de revisión judicial.[3] Alegó que la Junta de Subastas de la A.M.A. había errado al iniciar el proceso de requerimiento de propuestas para la contratación de los servicios de publicidad en sus autobuses y terminales pese a la vigencia de un contrato válido entre ella y la Autoridad para la prestación de dichos servicios. Impugnó además la

---

[3] Presentó además una moción en auxilio de jurisdicción en la que solicitó la paralización del procedimiento de subasta y otorgamiento de contratos. El Tribunal de Apelaciones ordenó la paralización de los procedimientos administrativos.

adjudicación a favor de Viu Media alegando que su propuesta era más beneficiosa. Sostuvo que la Junta de Subastas de dicha corporación no podía tomar en cuenta la experiencia pasada de contratación, debido a que ello no figuraba entre las condiciones del requerimiento y porque no se le había permitido rebatir las alegaciones hechas en este aspecto. Por último, adujo que la A.M.A. había errado al negarle acceso al expediente administrativo de la subasta.

El tribunal *a quo* concluyó que no existía impedimento legal alguno para que la A.M.A. publicara su requerimiento de propuestas. Estimó que correspondería al Tribunal de Primera Instancia determinar –en el procedimiento de *injunction*– si el contrato entre las partes aún estaba vigente y si el mismo había sido incumplido por la Autoridad. El Tribunal de Apelaciones resolvió además que la adjudicación a favor de Viu Media no había sido arbitraria ni irrazonable, sino conforme a los reglamentos aplicables, los cuales facultaban a la A.M.A. para tomar en consideración la experiencia de contratación pasada con Trans Ad. Por último, el foro recurrido señaló que los documentos obrantes en el expediente administrativo del procedimiento de requerimiento de propuestas son públicos y que, por lo tanto, Trans Ad tenía derecho a examinarlos. Sin embargo, resolvió que, en el presente caso, la notificación de adjudicación "contiene información suficiente para que [Trans Ad] conociera las razones por las cuales no resultó favorecida".

De dicha sentencia recurre Trans Ad ante este foro y alega que el tribunal recurrido erró al confirmar la adjudicación del requerimiento de propuestas a favor de Viu Media a pesar de que su propuesta era más beneficiosa económicamente. Sostiene que el Tribunal de Apelaciones no estaba en posición de concluir que había incumplido con el contrato de servicios que tenía con la A.M.A. sin que se le brindara la oportunidad de rebatir tales alegaciones. Por último, la parte recurrente imputa al tribunal *a quo* haber errado al no concederle a su representante la oportunidad de examinar los documentos obrantes en el expediente administrativo del procedimiento, a pesar de que le reconoció tal derecho en su sentencia.

El 17 de noviembre de 2006 expedimos el recurso de epígrafe. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

Antes de atender los méritos de la controversia planteada ante nuestra consideración, es preciso expresarnos en torno a la naturaleza del procedimiento celebrado por la Autoridad en el presente caso.

En *R&B Power v. E.L.A.*, 2007 T.S.P.R. 51, trazamos una distinción entre el procedimiento de subasta tradicional o formal y el requerimiento de propuestas como mecanismos de adquisición de bienes y servicios por parte del estado. Específicamente, puntualizamos que este último es un

procedimiento más informal y flexible que otorga a las agencias mayor discreción en sus gestiones adquisitivas, pues su característica sobresaliente es que admite negociación con los potenciales proveedores. En dicha ocasión refrendamos el uso del mecanismo de requerimiento de propuestas pues la ley orgánica del organismo concernido —la Autoridad de Acueductos y Alcantarillados— establecía que la corporación estaría dispensada del requisito de celebrar subastas formales en situaciones de emergencia. En tales casos, de acuerdo con la ley, la corporación podría llevar a cabo sus gestiones de adquisición de bienes o servicios en la forma usual y corriente en los negocios.

De manera análoga, el Reglamento de la Junta de Subastas de la Autoridad Metropolitana de Autobuses, Reglamento número 6480 de 2002, provee para dispensar del requisito de celebrar una subasta tradicional en situaciones de emergencia. Ahora bien, a diferencia de los hechos de *R&B Power v. E.L.A.*, *supra*, en el presente caso no estamos ante una determinación o expresión administrativa en cuanto a la existencia de una emergencia que justificara prescindir de la celebración de una subasta formal. Por lo tanto, en esta ocasión, la A.M.A. no estaba autorizada para tramitar la adquisición de los servicios de publicidad por medio del mecanismo de requerimiento de propuestas. Sin embargo, al examinar detenidamente el procedimiento llevado a cabo por la Autoridad, advertimos que el mismo goza de las características de una subasta

tradicional.[4]   Por lo tanto, al ejercer nuestra facultad revisora, consideraremos el procedimiento eje de la presente controversia como una subasta formal.

**B**

Es norma reiterada que el fin de los procedimientos de subasta, como mecanismos de adquisición de bienes y servicios por parte del estado, es proteger el erario y garantizar que dicho ente realice sus funciones administrativas responsablemente. *RBR Construction v. Aut. de Carreteras*, 149 D.P.R. 836, 848-49 (1999). Como hemos expresado anteriormente, para ello es necesario "que haya competencia en las proposiciones, fomentando la competencia libre y transparente entre el mayor número de licitadores…". *Empresas Toledo v. Junta de Subastas de la Aut. de Edificios Públicos*, 2006 T.S.P.R. 138.

Sin embargo, no existe un estatuto uniforme que regule los procedimientos de subasta. En este aspecto, la Ley de procedimiento administrativo uniforme establece que los mismos –a excepción de las etapas de reconsideración y revisión judicial– son de naturaleza informal, delegándose en las agencias la facultad para aprobar los reglamentos necesarios que establezcan sus normas y condiciones. 3

---

[4] A tales efectos, la agencia publicó una aviso de subasta en un periódico de circulación general editado en Puerto Rico, requirió la entrega de propuestas selladas y celebró un acto de apertura. El documento titulado *RFP2005-01 Advertising Services for Buses and Terminals* y que contiene las condiciones del requerimiento no establece que las propuestas estarían sujetas a negociación con la agencia.

L.P.R.A. secs. 2151, 2169, 2172. *Véase además*, *Perfect Cleaning Services v. Corp. del Centro Cardiovascular*, 162 D.P.R. 745, 757 (2004).

Aún así, es posible delinear varias etapas comunes a los procedimientos de subasta. En lo pertinente a la presente controversia, la subasta formal se caracteriza por el recibo de las propuestas selladas y su posterior apertura pública. *R&B Power v. E.L.A.*, *supra*. Una vez abiertas las propuestas, no se admiten modificaciones a las mismas, pues no hay cabida para la negociación entre las partes. *Id*. Esta secretividad que caracteriza la etapa anterior al acto de apertura de una subasta responde a la necesidad de garantizar que la competencia entre los licitadores sea efectiva y honesta. *RBR Construction v. Aut. de Carreteras*, *supra*, en la pág. 849. De esa manera se evita que algún licitador con mayor capacidad económica enmiende su propuesta con el fin de superar la de otro competidor. Ahora bien, "[u]na vez se han abierto las licitaciones, todos los postores conocen las cotizaciones de sus competidores". *Id.* Ello porque en dicha etapa las propuestas ya no son susceptibles de ser enmendadas.

Como resultado de lo anterior, al evaluar un reclamo de acceso al expediente administrativo de una subasta, es necesario tomar en cuenta el interés estatal en mantener la secretividad durante ciertas etapas del proceso con el propósito de adelantar el fin público de que el mismo se lleve a cabo de manera justa y equitativa para todos los

competidores. Examinemos entonces la normativa relacionada con el acceso a la información pública en poder del estado.

**III**

En nuestro ordenamiento existe un derecho fundamental al acceso a información pública. El mismo ha sido reconocido como corolario de los derechos de libertad de palabra, prensa y asociación expresamente consagrados en nuestra Constitución. *Ortiz v. Dir. Adm. de los Tribunales*, 152 D.P.R. 161, 175 (2000). La premisa subyacente a este reconocimiento es que sin acceso a información pública, el ciudadano no estaría en posición de juzgar las actuaciones gubernamentales o de exigir la reparación de agravios causados por las mismas. *Soto v. Secretario de Justicia*, 112 D.P.R. 477, 485 (1982). Esto, a su vez, contravendría nuestros principios democráticos que garantizan el derecho del pueblo a pasar juicio fiscalizador sobre todas las acciones y determinaciones del gobierno. *Ortiz v. Dir. Adm. de los Tribunales*, *supra*.

En consonancia con lo anterior, el artículo 409 del Código de Enjuiciamiento Civil crea un derecho general de acceso a información pública en poder del estado. Específicamente, éste dispone que "todo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley". 32 L.P.R.A. sec. 1781.

Como se desprende del lenguaje estatutario, todo ciudadano, por el solo hecho de serlo, tiene derecho a

examinar la documentación pública. *Ortiz Rivera v. Dir. Adm. de los Tribunales*, *supra*, en la pág. 176. Ahora bien, tal derecho no es absoluto ni ilimitado, sino que pueden existir intereses apremiantes del estado que justifiquen un reclamo de confidencialidad de su parte. *Angueira v. J.L.B.P. I*, 150 D.P.R. 10, 24 (2000); *Soto v. Secretario de Justicia*, *supra*, en la pág. 493.

A pesar de ello, no existe en nuestro ordenamiento legislación especial que establezca las instancias en que el estado tendría justificación para negar a un ciudadano acceso a un documento público. Por tal razón, hemos delineado jurisprudencialmente tales excepciones al derecho general creado por el artículo 409 del Código de Enjuiciamiento Civil. De acuerdo con nuestros pronunciamientos, un reclamo de confidencialidad por parte del estado está justificado cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente o (5) sea información oficial conforme la Regla 31 de Evidencia. *Santiago v. Bobb*, 117 D.P.R. 153, 159 (1986).

Ante un reclamo estatal de confidencialidad, los tribunales venimos llamados a evaluar el mismo *vis a vis* el derecho del ciudadano a tener acceso a la información. El examen o escrutinio judicial aplicable dependerá de la

excepción invocada por el estado como fundamento a su denegatoria de proveer acceso a la información pública. *Ortiz v. Dir. Adm. de los Tribunales*, *supra*, en la pág. 178; *Angueira v. J.L.B.P. I*, *supra*.

Como también se desprende del texto legal anteriormente citado, el derecho estatuido en el artículo 409 del Código Enjuiciamiento Civil puede ser invocado siempre y cuando el documento o información al cual se reclama acceso sea de naturaleza pública. A tales efectos, el artículo 1(b) de la Ley para la administración de documentos públicos define documento público como:

> [T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.
> 3 L.P.R.A. sec. 1101(b).

Como surge de lo anterior, un documento público es todo aquel que un organismo estatal recibe en el curso de sus procedimientos y que viene obligado a preservar. Por lo tanto, el expediente administrativo que contiene la documentación relacionada con el trámite de un procedimiento de subasta es, necesariamente, un documento público. Ahora bien, como acotáramos anteriormente, los procedimientos de subastas se caracterizan, en parte, porque las propuestas de los licitadores se presentan bajo un palio de secretividad. Asimismo, la dependencia

gubernamental conduce las etapas anteriores a la adjudicación de la buena pro sin la intervención de personas ajenas al trámite administrativo interno. Reconocemos que ambas características responden al interés público de garantizar la competencia justa entre las propuestas. Sin embargo, dicho interés se desvanece una vez adjudicada la subasta, cuando la agencia ha ejercido su criterio adjudicativo. Por lo tanto, resolvemos que, de ordinario, una vez se ha adjudicado la buena pro de una subasta, el expediente que contiene los documentos recopilados en el trámite de la misma está sujeto a la inspección de cualquier ciudadano en virtud del artículo 409 del Código de Enjuiciamiento Civil.[5]

Nuestra determinación es cónsona con los principios legales y de política pública que favorecen la transparencia en los procesos de adquisición del estado. Al garantizar el acceso a tales expedientes administrativos, adelantamos el objetivo primordial de proteger los intereses y dineros del pueblo y evitar el favoritismo y la corrupción en la gestión pública. *Mar-mol Co., Inc. v. Adm. de Servicios Generales*, 126 D.P.R. 864, 872 (1990). Ello porque el acceso a la información pública coloca al ciudadano en posición de fiscalizar las actuaciones gubernamentales y le faculta para defender sus intereses frente a actuaciones agravantes del estado. No

---

[5] No estamos pasando juicio, por no estar planteado, sobre la validez de un reclamo de confidencialidad respecto a algún documento del expediente de subasta, por contener éste información de carácter confidencial.

puede haber una verdadera fiscalización ciudadana de la gestión pública, si no se cuenta con el conocimiento de lo que se hace o se pretende hacer. La participación del ciudadano, en una especie de cogestión con su gobierno, sólo es posible cuando el individuo tiene la información pertinente y fidedigna acerca de la cosa pública. Así, por ejemplo, una parte con interés en impugnar la adjudicación de una subasta estará en mejor posición de ejercer su derecho una vez ha examinado el expediente del procedimiento. El acceso al expediente le permitirá evaluar los pormenores de las propuestas de los demás participantes en el procedimiento administrativo, así como los factores que movieron a la agencia a adjudicar la buena pro a favor de cierto proponente. Igualmente, el expediente revelará si la agencia cumplió con su propio reglamento en el trámite del procedimiento.

Sin embargo, lo anterior no puede ser interpretado en el sentido de que condicionamos el derecho de acceso al expediente administrativo al hecho de que la persona que lo solicite sea parte del procedimiento o tenga interés en impugnar el mismo. Por el contrario, el derecho de acceso a información pública lo ostenta cualquier ciudadano, por el solo hecho de serlo. Es decir, la sola condición de ciudadano supone la existencia del "interés especial" que legitima un reclamo de acceso a información pública. *Ortiz v. Dir. Adm. de los Tribunales*, *supra*, en la pág. 176.

**IV**

En su tercer señalamiento de error, Trans Ad de Puerto Rico, Inc. alega que el Tribunal de Apelaciones erró al no concederle la oportunidad de examinar el expediente administrativo a pesar de reconocer su derecho a hacerlo. Sostiene que sin el beneficio del mismo, se ha visto impedida de ejercer adecuadamente su derecho a impugnar la subasta. Igualmente, arguye que el Tribunal de Apelaciones no tuvo ante sí todos los elementos necesarios para ejercer su facultad de revisión, debido a que basó su análisis de los méritos de la adjudicación en la notificación de la agencia, sin constatar que la misma estuviera basada en las constancias del expediente administrativo.

En oposición, la A.M.A. sostiene que los procedimientos de subasta son de naturaleza informal, por lo que no existe un derecho a realizar el descubrimiento de prueba solicitado por Trans Ad a falta de una disposición reglamentaria que así lo exija. Arguye que la notificación brindó a la peticionaria la información necesaria para ejercer su derecho a impugnar el procedimiento adjudicativo. Igual postura asume Viu Media en su comparecencia.

De los autos del caso surge que, en efecto, Trans Ad ha solicitado infructuosamente, en múltiples ocasiones, acceso al expediente administrativo del procedimiento de adjudicación del RFP 2005-01 conducido por la A.M.A. Esta última, por su parte, no emitió determinación en relación

con la tercera moción de reconsideración de la adjudicación de la subasta presentada por Trans Ad y en la que ésta, entre otras cosas, denunció la denegatoria a su solicitud de examinar el expediente administrativo. Por lo tanto, no estamos ante un reclamo de confidencialidad por parte del ente público que podamos someter a un examen de validez conforme la normativa aplicable. Como resultado, a pesar de que Trans Ad ostenta un derecho fundamental a obtener acceso al expediente administrativo de la subasta en controversia, dicha parte tuvo que ejercer su derecho a solicitar reconsideración y revisión judicial sin el beneficio del mismo. El acceso al expediente hubiera brindado a la parte peticionaria la oportunidad de examinar las propuestas de los demás licitadores y constatar el contenido de la notificación de adjudicación. Asimismo, la inspección del expediente hubiera permitido a la parte interesada auscultar si la agencia cumplió con su propio reglamento al llevar a cabo el procedimiento de adjudicación de la subasta en controversia. Es decir, el examen del expediente hubiera puesto a Trans Ad en posición de ejercer cabalmente su derecho a solicitar reconsideración y revisión judicial de dicha determinación administrativa.

De la misma manera, con el beneficio del expediente administrativo, el Tribunal de Apelaciones hubiera estado en mejor posición para ejercer su facultad de revisión judicial. Al descansar únicamente en el contenido de la

notificación de adjudicación, dicho foro desatendió el hecho de que pueden existir razones ajenas al contenido de las propuestas de los licitadores y que no constan en la notificación, que justifiquen la revocación de la adjudicación de la subasta. Por lo tanto, erró al ejercer su facultad de revisión judicial sin antes brindarle a la peticionaria la oportunidad de examinar el expediente administrativo.

Si bien es cierto que, según aduce la A.M.A., los procedimientos de subasta son de naturaleza informal, dicha informalidad no derrota un válido reclamo de acceso a información pública. No hay duda además, de que poner a la disposición del licitador perdidoso que así lo solicite, el expediente de la subasta, no es un trámite oneroso para la dependencia gubernamental concernida. Por el contrario, el mismo abona a la transparencia de dichos procedimientos.

En suma, a Trans Ad no sólo le ampara el derecho de acceso al expediente administrativo sino que, en el presente caso, la interferencia con el mismo conllevó que dicha parte no pudiera ejercer adecuadamente su derecho a revisión judicial de la determinación administrativa de adjudicar la buena pro a favor de Viu Media. Tal error amerita la revocación de la sentencia del Tribunal de Apelaciones. El foro recurrido debió conceder a la parte peticionaria la oportunidad de inspeccionar el expediente administrativo para, con el beneficio del mismo, impugnar la subasta en controversia.

En virtud de los pronunciamientos que anteceden, se revoca la sentencia del Tribunal de Apelaciones aquí recurrida mediante la cual dicho foro confirmó la adjudicación del RFP 2005-01 de la Autoridad Metropolitana de Autobuses. Además, se ordena a la A.M.A. poner a disposición de Trans Ad el expediente de dicho procedimiento administrativo para su inspección. Con el beneficio del mismo, dicha parte podrá, si así interesa, ejercer nuevamente su derecho a impugnar la subasta. En vista de nuestra determinación, se hace innecesario discutir el resto de los planteamientos de la parte peticionaria.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Trans Ad de Puerto Rico, Inc.

    Peticionario

       v.

                        CC-2006-778

Junta de Subastas
Autoridad Metropolitana
de Autobuses

    Recurrido


Sala Especial integrada por el Juez Asociado señor Rivera Pérez como su Presidente y las Jueces Asociadas señora Fiol Matta y señora Rodríguez Rodríguez


SENTENCIA

San Juan, Puerto Rico, a 24 de junio de 2008

        Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia revocando la sentencia del Tribunal de Apelaciones aquí recurrida mediante la cual dicho foro confirmó la adjudicación del RFP 2005-01 de la Autoridad Metropolitana de Autobuses. Además, se ordena a la A.M.A. poner a disposición de Trans Ad el expediente de dicho procedimiento administrativo para su inspección.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo